U.S. DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-23070-CIV-ALTONAGA/Simonton

*In Re*

**ROYAL CARIBBEAN CRUISES LTD.
LITIGATION**
_____/

**AMENDED ANSWER, AFFIRMATIVE DEFENSES AND CLAIM**

COMES NOW, Claimant, **LINDA SHANTA ARNOLD**, by and through undersigned counsel, and hereby files this, her Amended Answer, Affirmative Defenses and Claim, and in support thereof would state as follows:

1. Claimant, **LINDA SHANTA ARNOLD,** admits the allegations contained in Paragraph Nos. 4 and 5 of the Petitioners' Complaint for Exoneration from or Limitation of Liability regarding the renting of the Jet Skis, but denies the enforceability of the releases mentioned therein; the Claimant admits Paragraph No. 6 with respect to her own injury, but denies the remainder of the allegations with respect to anyone else's injury; the Claimant admits the allegations of Paragraph No. 16.

2. Claimant, **LINDA SHANTA ARNOLD**, denies each and every allegation set forth in Paragraph Nos. 1, 2, 4, 8, 9, 10, 11, 12, 14, 15, 17 and 18 of Petitioners' Complaint for Exoneration from or Limitation of Liability.

3. Claimant, **LINDA SHANTA ARNOLD**, is presently without knowledge or information sufficient to form an educated response to the allegations set forth in Paragraph Nos. 3, 7 and 13 of Petitioners' Complaint for Exoneration from or Limitation of Liability and based on such lack of knowledge or information, denies each and every allegation set forth in said paragraphs.

## AFFIRMATIVE DEFENSES

4. As a separate and first affirmative defense to the Petitioners' Complaint for Exoneration from or Limitation of Liability, and to each and all of its alleged causes of action, Claimant, **LINDA SHANTA ARNOLD**, alleges that her injuries aboard the Petitioners' vessel was caused by the fault or negligence of the Petitioners, as owners or operators of the vessels, and, in particular, the "Monarch of the Seas."

5. As a separate and second affirmative defense to the Petitioners' Complaint for Exoneration from or Limitation of Liability, **LINDA SHANTA ARNOLD**, alleges that the negligence which caused her injuries was within the privity and knowledge of Petitioners, as owners/operators of the vessels, including the "Monarch of the Seas.".

6. As a separate and third affirmative defense to the Petitioners' Complaint for Exoneration from or Limitation of Liability, and to each and all of its alleged causes of action, Claimant, **LINDA SHANTA ARNOLD**, alleges that the negligence which caused her injuries was caused by the Petitioners' failure, as owners/operators of the vessels, including the "Monarch of the Seas," to maintain the vessels in a seaworthy condition.

7. As a separate and fourth affirmative defense to the Petitioners' Complaint for Exoneration from or Limitation of Liability, and to each and all of its alleged causes of action, Claimant, **LINDA SHANTA ARNOLD**, alleges that the Affidavit of Value and the Ad Interim Stipulation for Value filed by Petitioners, does not accurately represent the true post casualty value of the vessels and appurtenances, including the "Monarch of the Seas"

WHEREFORE, having fully answered the Petitioners' Complaint for Exoneration from or Limitation of Liability, Claimant, **LINDA SHANTA ARNOLD**, respectfully requests that

this Honorable Court cause the Complaint to be dismissed with prejudice; enter judgment against the Petitioners; Order that the Petitioners take nothing by virtue of the Complaint; award unto the Claimants the reasonable costs incurred in connection with the defense of this action; and for such other and further relief that this Honorable Court deems just and proper.  The Claimant further demands trial by jury on all issues thereby triable.

### AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**COMES NOW** Plaintiff, **LINDA SHANTA ARNOLD**, by and through her undersigned counsel, and files this Complaint for Damages and Demand for Jury Trial against Defendant, **ROYAL CARIBBEAN CRUISE LINE, a foreign Corporation** (hereinafter "Defendant"), and alleges as follows:

### GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

1. This is an action for damages that exceeds this Court's minimum jurisdictional requirements, to wit, $75,000.00, exclusive of all interest and costs. This Court has jurisdiction based upon 28 USC Sec. 1332 and the forum selection clause contained in the passenger ticket between Plaintiff and Defendant and under the general maritime law of the United States.

2. At all times material, Plaintiff, **LINDA SHANTA ARNOLD,** was and is a resident of Griffin, Georgia, and at all times material was a passenger on Defendant, **ROYAL CARIBBEAN CRUISE LINE's** vessel, the "Monarch of the Seas," and participated on an excursion under the direction of Defendant, **RCCL** crew and employees who led the jet ski excursion.

3. At all times material, Defendants, **ROYAL CARIBBEAN CRUISE LINE**, personally or through an agent:

    A. Operated, conducted, engaged and/or carried on a business venture in the State of Florida, and in particular Miami-Dade County, Florida;

    B. Were engaged in substantial business activity in the State of Florida, and in particular, in Miami-Dade County, Florida;

    C. Operated vessels and provided vessels for cruises in the waters of this state;

    D. Committed one or more acts as set forth in F.S. §48,081, 48.181 and 48.193, which submit the defendant to the jurisdiction and venue of this Court. Further, this court has jurisdiction of this action under 28 U.S.C. §1333(1);

    E. The acts of defendants set out in the Complaint occurred in whole or in part in Miami-Dade County and/or the State of Florida;

4. At all times material hereto, Defendant, **ROYAL CARIBBEAN CRUISE LINE,** owned, operated and managed a passenger cruise ship known as the "Monarch of the Seas" ("The Vessel"), such vessel being used as a passenger cruise vessel, and sold and marketed the subject Jet Ski excursion on which Plaintiff was injured and whose crew members conducted and led the jet ski tour on which Plaintiff was injured.

5. At all times material hereto, Plaintiff and her husband, were passengers onboard the "Monarch of the Seas", a cruise ship owned and operated by **RCCL**. On and before the date of the incident, February 27, 2011, **RCCL** promoted, sold, vouched for, and/or recommended the Jet Skiing excursion to the Plaintiff, **LINDA SHANTA ARNOLD**, and her husband.

6. At all times material hereto, the Jet Ski and the Monarch OTS were in navigable waters. The cruise excursion on which the incident occurred was part and parcel of the cruise

and the cruise experience and in fact, took place, on the Defendant, **RCCL**'s privately owned island, Coco Cay.[1]

7.  At such time and place, Plaintiff, **LINDA SHANTA ARNOLD,** was lawfully and legally aboard such vessel and the Jet Ski and participated on such excursion as an invitee and paying passenger with the actual and/or constructive consent of Defendant, **RCCL**.

8.  At all times material hereto, Defendant, **RCCL**, is and was a for-profit, foreign corporation, which are based in and/or with agents in Miami, Florida, and are authorized to conduct and are conducting business in the State of Florida. Defendants have consented to jurisdiction and venue in this Court. Defendants require in the contract of carriage that all cases filed by passengers be filed in this jurisdiction.

9.  Upon information and belief, the Defendant, **RCCL**, interviewed, evaluated, vetted, examined, and/or hired its jet ski instructors/operators and RCCL crew in its Main Offices (in Miami, Florida), and had investigation and background checks conducted in **RCCL**'s Miami headquarters and but for these hiring and vetting activities, would not have been hired.

10. All conditions precedent to the institution of this action have been satisfied, or otherwise excused, including the pre-suit notice required by the terms and conditions of Defendant's cruise ticket. (See notice letter attached as Exhibit "A.")

11. At all times material hereto, Defendant, **ROYAL CARIBBEAN CRUISE LINE**, exercised control over the operations of its crew/Jet Ski operators who conducted the shore

---

[1] www.Wikipedia.com describes "Coco Cay" as the former "Little Stirrup Cay", as less than one (1) mile wide and less than 200 yards from North to South, and was renamed "Coco Cay" when Defendant, **Royal Caribbean Cruise Lines (RCCL)**, acquired Admiral Cruises and assumed the lease on the island. RCCL's own website, www.RoyalCaribbean.com/findacruise/ports/group/home.do, describes Coco Cay as "reserved exclusively for Royal Caribbean Guests."

excursion in Coco Cay, Bahamas known as the Wave Jet Tour (hereafter "the shore excursion").

12. On February 27, 2011, Ms. Arnold participated in an excursion she purchased on Coco Cay.[2] The Wave Jet Tour excursion was and is described as a 50-minute guided Jet Ski ride which took passengers around the Berry Islands, neighboring Coco Cay. Soon after the excursion had begun, the crewmember/tour guide(s) leading the group of cruise passengers on the Jet Ski tour, instructed each Jet Ski rider or group (depending on the number of riders per Jet Ski), when it was their turn to go ahead into open waters and wait at a designated meeting point (a buoy) before proceeding to follow the lead operator. The crewmember(s) failed to properly control and direct the group allowing one or more of the riders to speed ahead too soon and before the forward jet skiers had left the designated meeting point, striking Plaintiff with a jet ski and resulting in severe injuries to Plaintiff.[3]

13. On the day of the shore excursion, Defendant, **RCCL**, did not warn Plaintiff or her companions that dangerous situations could be encountered on the shore excursion, or of the existence of intoxicated and potentially unfit participants.

14. The duties of Defendant, **RCCL**, of reasonable care under the circumstances and to provide and maintain a safe, secure, and worry free Jet Skiing excursion and experience and to inspect the Jet Skiing excursion, its operators, participants, procedures, weather, and other

---

[2] The fee for the excursion was charged to Plaintiff's shipboard account and paid to Defendant, **RCCL**.

[3] During the preparations for the excursion when the group participants came together, Plaintiff and other participants observed the driver of the Jet Ski who struck Plaintiff, and her companion, to be acting erratically, inattentive to the instructions, and overtly under the influence of drugs or alcohol, sufficient to give ample notice the Defendant, **RCCL**, its agents and employees, including the Jet Ski operators and instructors who have a duty, under the circumstances, to control said unfit participants and prevent them from participating as unable and potentially harmful to others.

conditions arise among other things from the following:

    a. **RCCL** represents to the public, including to the Plaintiff herein that **RCCL** would provide and maintain safe and secure excursions, which are extremely dangerous, which **RCCL** through careful initial choice and proper continuous inspections can control the quality of, and which the passenger has no knowledge or control over. **RCCL** advertises and promotes excursions to all its passengers onboard the ship through its literature about the cruise, through video presentations which were broadcast on the video monitors throughout the ship (television monitors are located in passengers' cabins as well as in public areas) continuously during the cruise, through its web site, through posters located onboard the subject cruise ship, and through excursion meetings held onboard subject cruise ship;

    b. **RCCL** offers these excursions as part and parcel of the cruise itself and for the benefit of **RCCL**;

    c. This Jet Ski excursion at **RCCL**'s privately owned island, Coco Cay, is extremely dangerous to the passengers of **RCCL**; **RCCL** through careful initial choice and proper continuous inspections can control the quality of this excursion, its selected tour guides, and thereby fulfill its promises and representations in its literature, shipboard presentations and elsewhere, and **RCCL**'s passengers have no knowledge or control over the risk and the precautions taken by **RCCL** to make sure that the excursion is safe, and it's selected crew are vetted, screened, hired, and retained appropriately and reasonably under the circumstances.

15. Shore Excursions such as the shore excursion in question are a substantial part of the cruise vacations aggressively promoted and sold by Defendants to its passengers. Defendants derive substantial income from marketing and selling shore excursions to passengers, such as Plaintiff, on its cruise ships. This excursion differs from the typical third-party excursion in that the location of the excursion takes place on a small island wholly controlled and under the sole care and maintenance of Defendant, **RCCL**, and its agents and all aspects of access and use at Coco Cay is within the sole custody and control of **RCCL** and its agents.

16. Defendants employ numerous crewmembers and shore-side employees on its cruise ships and in its headquarters in Miami, Florida who are responsible for issues of "tour safety," hiring of guides, supervisors, and setting policies and procedures designed to promote the enjoyable participating and safety of passengers purchasing these and other excursions, especially on Coco Cay and other "controlled" locations. Defendants involve themselves in all incidents when its passengers are reported to be injured during cruise sponsored shore excursions.

17. The Defendants, **RCCL**, at all times material and hereto were engaged in the business of providing a cruise vacation experience to the public. Part and parcel of this experience are the shore excursions. **RCCL** provides, organizes, promotes, advertises, and vouches for the safety of its excursions, which are sold through its website, in its literature, and onboard its ships. These excursions are part and parcel of the cruise experience on the **RCCL** ships. The excursions become a permanent part of that particular cruise and are described in the literature and other material published by **RCCL** and depicted in photographs in that literature and other materials. Different cruises are distinguished by the ports at which the ships call and by

what excursions are offered at the ports by the cruise line. **RCCL** provides a color brochure, which descriptions of the excursions offered, and photos of its passengers on such excursions. **RCCL** has a portion of its website dedicated to shore excursions. **RCCL** uses the excursion to attract the public to purchase the cruise ticket to get onboard its ships and **RCCL** profits directly from the sale of the excursion. **RCCL** takes in and keeps a large portion of the excursion revenue.

18.     **RCCL** promotes the excursions, advertises them, lists them, photographs them, represents that they are part of the cruise experience, allows and encourages payment of them onboard, provides an onboard excursion desk with "advisors" (crewmembers) about excursions, issues "Shore Excursion tickets" for the excursion with the **RCCL** logo onboard at the excursion desk, charges these tickets to the passenger's cabin, organizes their passengers to go on each excursion, specifies assembly points for excursions, takes passengers to the excursion, in this case instead of taking a large percentage of the fee with the excursion operator derives all of the net income from the self-operated excursion, and represents that they, **RCCL**, provide a safe and appropriately run experience.

19.     Additionally and/or alternatively, the jet ski excursion operators are crew and therefore agents of **RCCL. RCCL** made these representations with the intent that its passengers rely upon them. Passengers including the Plaintiff and her companion in this case relied upon these representations in choosing the shore excursion as run and provided by **RCCL** on **RCCL**'s privately-owned island, the excursion on which the Plaintiff was severely injured.

20.     **RCCL** chooses which employees and crew operate this tour/excursion for passengers, who owe Plaintiff and other participants the same duty of reasonable care under the

circumstances on their own privately-leased island, Coco Cay, the location of the Jet Skiing excursion in this case. **Plaintiff, LINDA SHANTY ARNOLD, purchased excursion tickets on RCCL's privately-owned island, Coco Cay, and the tickets were billed directly to her RCCL stateroom, aboard the "Monarch of the Seas," using her RCCL stateroom key card on the island to pay.**

21. **RCCL** employs crew at the excursion desks to promote the excursions, to assist **RCCL** passengers in signing up for the excursions, and to organize the passengers on the days on which they go on the excursions.

22. **RCCL** receives a substantial amount of income from the sale of these excursions.

23. The Plaintiff herein, an **RCCL** passenger at the time of this incident, relied on the representations and assurances of **RCCL** to choose this excursion, a Jet Skiing excursion on **RCCL**'s privately-leased island, Coco Cay.

24. The cruise line was the apparent and actual principal, owner and/or operator of the subject excursion.

25. This case comes under the maritime jurisdiction of this Court and therefore the General Maritime Law of the United States. The incident occurred as the Plaintiff was a passenger engaged in activities, in this case a Jet Skiing excursion, which was promoted, sold, and vouched for by **RCCL** to its passengers on its cruise ship, the "Monarch of the Seas," as part and parcel of the cruise and the cruise experience, **RCCL** transports its passengers to the Jet Skiing excursion on the cruise ship, and the excursion was a part of the privately-leased (by **RCCL**) island of Coco Cay, Bahamas. Thus, the conditions of maritime jurisdiction of connection to traditional maritime activity and of location are satisfied.

26. The Jet Skis provided by Defendant, **RCCL,** were part and parcel of the cruise, owned or leased by the Defendant, **RCCL,** and a part of the flotilla, including the vessel "Monarch OTS" and are no different from the tenders of the ship.

## COUNT I
## NEGLIGENCE AGAINST ROYAL CARIBBEAN CRUISE LINE

27. Plaintiff re-adopts and re-alleges paragraph 1 through 26, and further alleges as follows:

28. At all times material hereto the Defendant, **ROYAL CARIBBEAN CRUISE LINE**, owed a duty to Plaintiff to exercise reasonable care under the circumstances.

29. The incident occurred due to Defendant's negligence of RCCL's crew by failing to exercise sufficient control over the operations of the shore excursion, as well as other acts of direct negligence and active wrongdoing alleged below.

30. Defendant has not taken reasonable and adequate steps to reduce the danger of its passengers who go on cruise-line sponsored shore excursions. Defendant heavily promotes the sale of **ROYAL CARIBBEAN CRUISE LINE**'s shore excursions without providing proper warnings to passengers of the dangers associated with such shore excursions.

31. Moreover, with any reasonable degree of attention, **RCCL** and its employees, agents, and crew operating the Jet Ski excursion knew, or reasonably should have known that the passenger participants who caused injury to Plaintiff were intoxicated, under the influence of drugs and/or alcohol and unfit to participate in this excursion. Alternatively, whether these passengers were in fact drunk or on drugs, their behavior was sufficient to put **RCCL** and Defendants, **JOHN AND JANE DOE**, its agents, crew, and employees, on constructive or inquiry notice of a potentially dangerous condition, yet through negligence, took no such action.

32. At all times material hereto, the Defendant's actions presented a known, foreseeable, and unreasonable risk of harm to the Plaintiff, **LINDA SHANTA ARNOLD**.

33. Defendant, **ROYAL CARIBBEAN CRUISE LINE** breached its duty owed to Plaintiff by committing one or more of the following acts of omissions:

A. Failing to provide a safe excursion (known as the Wave Jet Tour) for participation by passengers, including Plaintiff, from the cruise line's privately owned island;

B. Failing to follow its own operating procedures regarding regulation monitoring, and timing of passengers entering the open waters while on a Jet Ski;

C. Failing to adopt policies and procedures for the orderly and safe participation by its passengers, including Plaintiff;

D. Failing to properly train and vet safe passenger drivers to operate a Jet Ski;

E. Failing to inform and warn Plaintiff and other passengers of the dangerous and unsafe condition when participating in the subject excursion, while intoxicated, under the influence, or otherwise unfit to operate a Jet Ski on open waters;

G. Failing to adopt policies and procedures for the passengers using the Jet Skis, and for safe inspection and risk assessment of the Wave Jet Tour, to discover dangerous concealed conditions, and unsafe conditions, caused by other passengers and excursion tour guides on Jet Skis operating a Jet Ski while intoxicated, under the influence of drugs or other substances, rendering a participant unfit and a risk to themselves and other participants while operating a Jet Ski on open waters;

H. Failing to train crew members the proper and necessary procedures in timing, monitoring and regulation of passengers entering the open waters while on Jet Skis and in the dangers of allowing passengers to come into contact with each other;

I. Failing to train crew members the proper and necessary procedures to recognize intoxication, drug use, and/or other substance abuse, rendering a participant unfit and a risk to themselves and other participants while operating a Jet Ski on open waters;

J. Negligently supervising Jet Ski attendants;

K. Negligently observing the Jet Ski attendant in the performance of his/her duties so as to minimize any potential scope of harm to Plaintiff and other passengers/Jet Ski users similarly situated;

L. Failing to comply with Defendants own internal policies and procedures established by the ISM Code, SMS, SQM and other internal operational procedures required by the ISM Code, SOLAS and all applicable health, building and safety codes and national standards in accordance with 33 CFR 96.100 et. seq., 46 USC Section 3201 et. seq. and all Rules and Regulations, including, but not limited to all relevant NVIC'S of the United States Coast Guard.

M. Failing to report this incident to the US Coast Guard, Bahamian Police, and other authorities and to take appropriate remedial action pursuant to the ISM Code.

34. As a direct and proximate result of Defendant's negligence and her traumatic incident, Plaintiff, **LINDA SHANTA ARNOLD**, suffered bodily injuries and resulting pain and suffering, physical and mental pain and anguish, disability, loss of capacity for the enjoyment of life, expense of hospitalization and surgery, medications, loss of earnings, loss of the ability to earn money and expenses for physical therapy, and medical and nursing expenses. Said losses are either permanent or continuing in nature and Plaintiff will suffer these losses in the future.

35. Defendant has been timely notified of the particulars of Plaintiff's incident and all pre-conditions to this action have been met or waived.

## REQUEST FOR JURY

Plaintiff is entitled to and requests trial by jury against Defendant on all issues so triable as a matter of right.

Dated: April 12, 2012.

*/s/ Glenn J. Holzberg*
GLENN J. HOLZBERG
Fla. Bar # 369551
LAW OFFICE OF GLENN J. HOLZBERG
Offices at Pinecrest II, Suite 220
7685 S.W. 104th Street
Miami, Florida 33156
Telephone: (305) 668-6410
Facsimile : (305) 667-6161
glenn@holzberglegal.com

Philip D. Parrish, Esq.
Fla. Bar #541877
PHILIP D. PARRISH, P.A.
7301 SW 57th Court, Suite 430
Miami, Florida 33143
Telephone:  (305) 670-5550
Facsimile:   (305) 670-5552
phil@parrishappeals.com
*Attorneys for Claimant Linda Shanta Arnold*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 8, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing

BY: */s/ Glenn J. Holzberg*
GLENN J. HOLZBERG
Fla. Bar # 369551

## SERVICE LIST

CASE NO.: 11-23070-CIV-ALTONGAGE/Simonton

Lauren J. Smith, Esq.
lsmith@fflegal.com
Darren W. Friedman, Esq.
dfriedman@fflegal.com
Foreman Friedman, PA
2 S Biscayne Blvd Suite 2300
One Biscayne Tower
Miami, Fl 33131
Tel:   305 358-6555
Fax:  305 374-9077
*Attorneys for Petitioner*

Randy S. Ginsberg, Esq.
rginsberg@rccl.com
Royal Caribbean Cruises, Ltd.
1050 Caribbean Way
Miami, Fl 33132
Tel:   305 539-6327
*Attorney for Petitioner*

Philip D. Parrish, Esq.
phil@parrishappeals.com
Fla. Bar #541877
PHILIP D. PARRISH, P.A.
7301 SW 57th Court, Suite 430
Miami, Florida 33143
Telephone:  (305) 670-5550
Facsimile:    (305) 670-5552
*Attorney for Claimant Linda Shanta Arnold*

Glenn J. Holzberg, Esq.
glenn@holzberglegal.com
Fla. Bar # 369551
LAW OFFICE OF GLENN J. HOLZBERG
Offices at Pinecrest II, Suite 220
7685 S.W. 104th Street
Miami, Florida 33156
Telephone: (305) 668-6410
Facsimile : (305) 667-6161
*Attorney for Claimant Linda Shanta Arnold*