IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

IN ADMIRALTY

CASE NO. 11-23070-CV-SCOLA/Bandstra

IN RE THE COMPLAINT OF:
ROYAL CARIBBEAN CRUISES LTD.,
as owner of the two unnamed 2010 Seadoo
GTI-130 vessels, for Exoneration from
or Limitation of Liability.
_____/

**CLAIMANT LINDA ARNOLD'S MOTION TO INCREASE THE SECURITY OF THE LIMITATION FUND BY THE VALUE OF THE M/V MONARCH OF THE SEAS, OR THE VALUE OF RCCL'S FLEET OF 58 SEADOO JET SKIS.**

The Respondent/Claimant LINDA ARNOLD, pursuant to Rule F (7) of the Supplemental Rules of Admiralty of this Court, requests that this Court increase the limitation fund by the value of the M/V MONARCH OF THE SEAS, and her pending freight. In particular, the fund that RCCL deposited with the Court to initiate this action is insufficient and in violation of the Flotilla doctrine; more specifically, it does not include RCCL's interest in the value of all RCCL vessels that were engaged in the common enterprise and venture at RCCL's CocoCay Bahamas private resort where the Claimant was injured during a jet ski tour operated by RCCL.

As shown below, the limitation fund should be increased to include the value of all vessels involved in the incident ("RCCL's common flotilla"), including but not limited to all Seadoos and/or other jet skis on the CocoCay tour and the cruise ship, MONARCH OF THE SEAS which transported the Claimant to CocoCay as part of her Cruise. As grounds thereof, Claimant alleges as follows:

I.     **Factual Background**

This case arises out of severe injuries sustained by Claimant while on a Royal Caribbean

Cruises Ltd. ("RCCL") cruise. The Petitioner, Royal Caribbean Cruises Limited (RCCL), initiated these proceedings in anticipation of the claim filed by Linda Arnold, who, as RCCL acknowledges in its petition, was a passenger aboard RCCL's cruise ship MONARCH OF THE SEAS on February 27, 2011. (DE 1 Paragraph 4). This case is also before the court upon Ms. Arnold's amended answer, affirmative defenses, and counter claim (DE 29).

Ms. Arnold's counter claim asserts a cause of action against RCCL sounding in negligence under the general maritime law, and involving RCCL cruise vessel MONARCH OF THE SEAS. It is Ms. Arnold's position that the limitation fund should, pursuant to the Limitation of Liability Act, include the MONARCH OF THE SEAS as well as all Seadoo jet skis involved in the jet ski tour, not just the two unnamed Seadoo jet skis which RCCL has asserted as the basis for the value of the limitation fund.

The excursions in CocoCay offered to passengers aboard the MONARCH OF THE SEAS were part and parcel of the cruise. For example, the cruise ship never "docks" in the port of CocoCay; rather, it drops anchor near the "island" (CocoCay is a small land mass which is less than a mile wide from east to west and less than 200 yards from north to south) which has no living accommodations for passengers. To get passengers to its private "island," RCCL ferries them utilizing both lifeboats and/or a ferry it maintains in the island. The only amenities offered to the passengers at CocoCay is a beach and adjacent beach activities and water sports. As such, the "visit" to CocoCay amounts to nothing more than the cruise ship stopping near a large sandbar where passengers are offered the opportunity to participate in water sports activities. *See, e.g. Doe v. Celebrity Cruises, et. al.,* 394 F. 3d 891 (11th Cir. 2004) (holding that for purposes of cruise, there is no distinction in terms of liability whether a tort occurs inside the ship or at a scheduled port of call). Relying on the Supreme Court in *Norfolk Southern Railroad v. Kirby*,

343 U.S. at 25 ("[T]he shore is now an artificial place to draw a line"), the Eleventh Circuit held:

> … Ports-of-call not only add to the enjoyment of a cruise but form an essential function of the cruise experience… Plainly, individuals choose cruise ship vacations because they want to visit unfamiliar places ashore. Cruises to Alaska, the New England States, Bermuda or the Caribbean offer fundamentally different experiences, not generally because of any material difference between ships, but often because of where the ship elects to stop. . *See Isham v. Pacific Far East Line, Inc..,* 476 F. 2d 835, 837 (9th Cir. 1973) ("where a passenger or cruise vessels puts into numerous ports, these stopovers are sine qua non of the cruise"). When a passenger selects a particular cruise, ports-of call or stopovers provide these passengers with the "cruise experience" for which they are paying … ***there was little practical difference between the port-of-call and other parts of the ship***.

*Id*. at 901. (Emphasis Added).

While MONARCH OF THE SEAS anchored adjacent to CocoCay, RCCL organized the "Wave Jet Tour." Passengers who purchased the excursion were placed on jet skis, in the waters adjacent to both the cruise ship and the beach, for a guided tour under the supervision of tour leaders who were RCCL employees.

## II.     Procedural Background.

On August 25, 2011, RCCL filed a Verified Complaint for Exoneration From or Limitation of Liability, pursuant to 46 U.S.C. §§181-188, ("The Limitation Act"). [D.E. 1]. In its Verified Complaint, RCCL invokes the Limitation Act, requesting that it be either exonerated from Liability for Claimant's injuries, or that such liability be limited to the value of two (not specifically identified) jet skis that collided in this incident.  According to RCCL, its interest in these two jet skis (their value) is USD $9,600.00. [D.E. 6].[1]

---

[1] The Eleventh Circuit has determined that jet skis are vessels under the Limitation Act.  *In re Complaint of Royal Caribbean,* 459 F.Supp.2d 1284 (S.D. Fla. 2006) (Cooke, J.) (*citing Keys Jet Ski, Inc. v. Kays,* 893 F.2d 1225, 177-30 (11th Cir. 1990)).  Thus, the Limitation Act is applicable

**RCCL's Limitation Fund.** In order to successfully file a Limitation Act Complaint, ship-owners are required to deposit with the Court, a sum equal to the amount or value of the owner's interest in the vessel and pending freight. *See* Supplemental Admiralty Fed. R. Civ. P. F (1) (requiring as a pre-condition to filing a Limitation Act complaint "the [ship]owner shall deposit with the court, for the benefit of Claimant, a sum equal to the amount or value of the owners interest in the vessel and pending freight …").

On August 22, 2011, RCCL filed a stipulation representing to the Court of its intent to deposit no more than the sum of $9,600.00 (the purported value of the two colliding jet skis), in the form of a surety bond with the Court's registry with interest at the rate of 6% per annum, within fifteen (15) days after the demand thereof by any Claimant. [DE 6].

**RCCL's Limitation Fund (limited to the value of two (2) jet skis) is insufficient.** Pursuant to Supplemental Admiralty Rule F (7), "[a]ny claimant may by motion demand that the funds deposited in the court or the security given by the [ship-owner] be increased on the ground that they are less than the value of the [ship-owner's] interest in the vessel and pending freight." As explained below, the value of the limitation fund proposed by RCCL is insufficient and inaccurate. Pursuant to the flotilla doctrine the personal watercraft or jet ski provided to Claimant by RCCL during the cruise, was merely one of a number of vessels engaged in the common purpose of the cruise. This cruise involved not only the jet ski assigned to Claimant, and the jet ski utilized by the other passenger, but also all of the other jet skis utilized by RCCL during the subject cruise and assigned to other passengers and employees, as well as the subject cruise ship, MONARCH OF THE SEAS. Accordingly, the Limitation fund should be increased

to this proceeding. *Id.* at 1287.

encompass the value of all of the vessels in RCCL's common flotilla, including, but not limited to, the value of all jet skis utilized on the tour and the value of the cruise ship, MONARCH OF THE SEAS.

## ARGUMENT

> **Increasing the limitation fund under the Flotilla Doctrine is warranted.** *First,* **there was a contractual relationship between RCCL and the Claimant.** *Second,* **RCCL was and is the owner of all jet skis on the Wave Jet Tour as well as the MONARCH OF THE SEAS;** *Second***, The MONARCH OF THE SEAS and the subject jet skis were part of a common enterprise (to entertain passengers of the subject cruise).** *Third*, **the MONARCH OF THE SEAS and the jet skis were subject to single command.**

Ms. Arnold's claims against ROYAL CARIBBEAN CRUISES, LTD. arise from her status as a cruise passenger aboard the M/V MONARCH OF THE SEAS. The owner (here ROYAL CARIBBEAN CRUISES, LTD.) of a Vessel (here the MONARCH OF THE SEAS) has a duty to provide a vessel that is reasonably fit for its intended use. This duty to provide a seaworthy vessel requires that the vessel, its gear, appurtenances, and *operations* must be reasonably safe.

As set forth above, a limitation action cannot be maintained unless the ship-owner deposits with the Court money, or as is usually done, a bond equal to the value of the vessel. *See* Fed. R. Civ. P. Supp. F(2). Posting of this security creates a limitation fund from which successful claimants in the action can be paid pro rata. Fed. R. Civ. P. Supp. F(1)(b). Here, on August 26, 2011, RCCL filed a stipulation representing to the Court of its intent to deposit no more than the sum of $9,600.00 (the value of the two colliding jet skis), in the form of a surety bond with the Court's registry with interest at the rate of 6% per annum.

Pursuant to Fed. R. Civ. P. Supp. F(7), the Claimant (in this case Linda Arnold) can

petition the Court to require RCCL to increase the limitation fund to include the value of all vessels in its flotilla. *See Foret v. Transocean Offshore (USA), Inc.,* 2011 U.S. Dist. LEXIS 96679 (E.D. La. 2011):

> Procedurally, courts have permitted [claimants] to invoke the flotilla doctrine in a variety of ways. Where a limitation fund already exists, Rule F(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims permits Plaintiffs to file a Motion to Increase the Limitation Fund, when the amount tendered is less than the value of the [combined group of] vessel(s).

Thus, "*Section 183* [the Limitation Act] notwithstanding, the flotilla doctrine provides one way to challenge a ship-owner's claim of a limitation of liability defense." *Foret, citing Cenac Towing Co., Inc. v. Terra Resources Inc.,* 734 F. 2d 251, 254 (5th Cir. 1984). Courts determine whether vessels together constitute a flotilla by applying the "single venture test." *Id.* For a group of vessels to be considered a flotilla, the single venture test sets forth three requirements: they must (1) be owned by the same person, (2) be engaged in a common enterprise, and (3) be under single command. *Id.*; *See also Complaint of Tom Quin Co., Inc.,* 806 F. Supp. 945 (M.D. Fla. 1993), *citing Patton–Tully Transportation Co. v. Ratliff,* 715 F. 2d 219, 222 (5th Cir.1983) ("the limitation fund liability of a defendant ship-owner may be increased to include his interest in the value of all vessels engaged in a common enterprise or venture with the vessel aboard which the loss of or injury was sustained").[3]

To determine how to apply the flotilla doctrine, courts have distinguished between two types of cases. First, the "pure tort" case is where the claimant and the vessel owner are not in privity of contract. *Liverpool, Brazil & Silver Plate Steam Navigation Co. v. Brooklyn E. Dist.*

---

[3] The flotilla doctrine was developed by Judge Learned Hand in *Standard Dredging v. Co. v. Kristiansen,* 67 F.2d 548 (2d Cir. 1933).

*Terminal*, 251 U.S. 48, 53-54 (1919). Under "pure tort" cases, only the vessels that caused the damage, the "offending vessel" is part of the limitation fund. *See Liverpool*, 251 U.S. at 51. In "pure tort" cases, therefore, the flotilla doctrine is not applied. The second type of case is in incidents where the claimant and the vessel owner have a contractual relationship. *Sacramento Navigation Co. v. Salz*, 273 U.S. 326 (1927). Thus, where the owner is in a contractual relationship with the injured party and several vessels are involved in the performance of said contract, the entire flotilla (*i.e.* jet skis and the cruise ship) is regarded as one vessel for purposes of establishing the limitation fund, and the owner is required to surrender all vessels. *See Complaint of Tom Quin Co., Inc.,* 806 F. Supp. 945 (M.D. Fla. 1993), *citing Salz,* 273 U.S. at 332.

This Honorable Court should require RCCL to increase the limitation fund to include the value of all vessel's in RCCL's flotilla located at CocoCay at the time of the subject incident (*i.e.* value of all jet skis plus value of the cruise ship) if it is found that: 1) RCCL was in a contractual relationship with the Claimant, 2) the jet skis and the cruise ship at CocoCay were engaged in the same enterprise, and 3) the jet skis and the cruise ship shared common ownership and command. *See Foret v. Transocean Offshore (USA), Inc.,* 2011 U.S. Dist. LEXIS 96679 (E.D. La. 2011)*, citing Cenac Towing Co., Inc. v. Terra Resources Inc.,* 734 F. 2d 251, 254 (5th Cir. 1984):

> *Section 183* [the Limitation Act] notwithstanding, the "flotilla doctrine" provides one way to challenge a ship-owner's claim of a limitation of liability defense. Courts in the Fifth Circuit determine whether vessels together constitute a flotilla by applying the "single venture test." The single venture tests sets forth three requirements; for vessels to be considered a flotilla they must (1) be owned by the same person, (2) contractually engage in a common enterprise, (3) under single command.
>
> … The flotilla doctrine applies in this case, because DCL and its lifeboats were owned by the same person, were engaged in a

> common venture at the time of the accident, and were under single command. *See Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Company*, 377 F. 2d 724, 727 (5th Cir. 1967). Because DCL and its lifeboats thus constitute a flotilla, and because the flotilla doctrine requires the inclusion of all vessels in a flotilla for limitation purposes, Transocean is not entitled to a §183 defense that limits liability to the value of Lifeboat No. 4.

*Id*.; *see also In re Waterman S.S.,* 794 F. Supp. at 603-04 (E.D. La. 1992):

> The determination of this motion requires an interpretation of the "single venture theory" or "flotilla doctrine" which provides that all vessels engaged in a common venture should be considered one vessel for limitation purposes. Under this theory, the value of all vessels engaged in the venture must be surrendered to determine the value of the limitation fund. The Fifth Circuit, in *Wirth Ltd. v. S/S Acadia Forest* explained the theory: Likewise, courts construing the ship-owners Limited Liability Act, 46 U.S.C.A. §§ 181-89, have held that when vessels are engaged in a common transportation enterprise they should often be considered one vessel for limitation purposes.

i. **At all times material, RCCL was in a contractual relationship with the Claimant, Linda Arnold.**

RCCL is attempting to limit its liability to the value of the two jet skis involved in the collision. Thus, RCCL's proposed fund is to limit it to the value of the vessels that caused the damage – the so-called "offending vessels." While this might be a proper limitation fund in a "pure tort" case, it is not a proper limitation fund in a situation in which the injured party is in privity of contract with the ship-owner. *See The Shipowners' Limitation of Liability Act: Still Afloat or Sinking Fast?,* 24 Tul. Mar. L.J. 659 (Spring 2000), *citing Liverpool, Brazil & Silver Plate Steam Navigation Co. v. Brooklyn E. Dist. Terminal,* 251 U.S. 48, 53-54 (1919) and *In re Waterman S.S.,* 794 F. Supp. at 603-04 (If no privity of contract exists between vessel owner and the injured claimant, then only the value of the actual offending vessel need be included in the computation of the limitation fund. This concept is often referred to as the "pure tort" limitation

to the flotilla rule.)

This matter, however, is *not* a "pure tort" case. Rather, it is undisputed that at all relevant times the Claimant was in a contractual relationship with RCCL. As such, the flotilla doctrine is applicable and RCCL's proposed fund including only the value of "offending jet skis" is insufficient. *See Sacramento Navigation Co. v. Salz*, 273 U.S. 326 (1927) (If the vessel owner and the injured claimant were parties to a contract at the time of the loss leading to the limitation action, then the owner must include in the limitation fund the value of all vessels covered by the contract covered with the injured claimant); *United States Dredging Corp. v. Krohmer*, 264 F. 2d 339, 341 (2d Cir. 1959) (All of the limiting owners vessels necessary for the performance of the contract will make up the "flotilla" whose aggregate value will constitute the fund).

The relationship between RCCL and the Claimant was contractual in nature in the following ways: *First*, Linda Arnold was a paying passenger on RCCL's cruise. As a paying passenger, the Claimant was owed duties under the contract of carriage – the passenger ticket contract. *See Palmer v. Norwegian Cruise Line,* 741 F. Supp. 2d 405 (E.D. NY 2010), *citing Carnival Cruise Lines, Inc., v. Shute*, 499 U.S. 585 (1991):

> It is well-established that a ticket for passage on a cruise ship constitutes a maritime contract and is governed by United States maritime law. *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, (1991). Applying this law, numerous cases from both the Second Circuit and various district courts have held that a passenger's ticket may constitute a contract with a carrier even when the passenger neither purchases nor sees that ticket.

*Second*, it was *only* by virtue of Claimant's status as a paying passenger on the MONARCH OF THE SEAS that she was transported to CocoCay and permitted to use one of RCCL's jet skis. In other words, but for the cruise, the Claimant would not have had the opportunity or ability to use one of RCCL's jet skis. Indeed, since CocoCay is wholly private,

and wholly owned and controlled by RCCL, the island is exclusively reserved for RCCL passengers – and closed to the public. Hence, CocoCay operated exclusively (for the subject day) as an extension of the cruise ship. *See* RCCL's own description of CocoCay, attached hereto as Exhibit "A" ("Reserved exclusively for Royal Caribbean guests, this tropical paradise has been recently updated"). RCCL's website page entitled "Port Explorer" for CocoCay, Bahamas points out that "just as onboard, lounge chairs on CocoCay are complimentary." (Exhibit "B" attached hereto). Cruise passengers are instructed to "bring towels from the ship as towels are not available on the island." (Exhibit "B"). Furthermore, "payment for beverages ashore is by way of your SeaPass card only." In other words, CocoCay is a virtual extension of the cruise ship under RCCL's complete control and authority, rather than an actual port of call.

During the day, the RCCL passengers may engage in activities aboard the cruise ship, at the beach of CocoCay, or within the waters shared by the cruise ship and CocoCay. RCCL passengers may not leave the immediate area of the cruise ship and CocoCay and similarly, the public (non-RCCL passengers and employees) may not access the immediate area of the cruise ship and CocoCay.

All in all, the contract between the Claimant and RCCL was for a cruise vacation. The excursion on the jet skis at CocoCay was one of the amenities provided by RCCL during that cruise. Therefore, the subject incident arose out of a contractual relationship between RCCL and Claimant for the cruise and jet ski tour.

**ii.    The jet skis and the cruise ship at CocoCay are owned by the same entity: Royal Caribbean Cruises, Ltd.**

It is undisputed that Royal Caribbean Cruises, Ltd. owns and controls the fleet of jet skis at CocoCay. Moreover, it is undisputed that Royal Caribbean owns and controls the MONARCH

OF THE SEAS, the other vessel in the flotilla. As such, the flotilla doctrine applies because the jet skis and the cruise ship, at the time of the incident, shared common ownership. *See Foret v. Transocean Offshore (USA), Inc.,* 2011 U.S. Dist. LEXIS 96679 (E.D. La. 2011)*; Cenac Towing Co., Inc. v. Terra Resources Inc.,* 734 F. 2d 251, 254 (5th Cir. 1984); *Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Company*, 377 F. 2d 724, 727 (5th Cir. 1967).

### iii. The jet skis and the cruise ship at CocoCay were engaged in a common enterprise.

In order for a ship-owner to limit liability for breaches incidental to a contract, all vessels which take part in the undertaking must be surrendered. The fact that the vessels are not physically bound together is irrelevant; the test is 'devotion to a single venture.' *In the Matter of Falcon Workover Company, Inc.*, 1998 WL 760397 (E.D. La. 1998) *citing Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Company*, 377 F. 2d 724, 727 (5th Cir. 1967).[4] In *United States Dredging Corp. v. Krohmer*, 264 F. 2d 339 (2d Cir. 1959), the factor determining that vessels constituted a flotilla was their interdependence. In that case, a dredge depended on attending vessels for propulsion and for transportation of its crew and supplies. It was held that the attending vessels were necessary to the performance of the contract in which the dredge was engaged and therefore, with the dredge, constituted a flotilla under 46 U.S.C. §183.

**Part of the cruise package.** Here all of the jet skis and the cruise ship, MONARCH OF THE SEAS, were engaged in a common enterprise at CocoCay; RCCL's entertainment of RCCL passengers on the cruise. Thus, the identifiable common enterprise is the cruise itself and the jet

---

[4] *See also In re Falco Workover Co.,* 1999 U.S. Dist. LEXIS 5994 (E.D. La. 1999) ("While it is true, as noted by Falcon, that the Flotilla Doctrine will apply when the vessels are physically bound together ... the doctrine is by no means limited to such factual circumstances. The test is "devotion to a single venture." *Brown & Root Marine Operators v. Zapata Off-Shore Co.,* 377 F.2d 724, 727 (5th Cir. 1967).

ski tour which was part and parcel of the cruise. Both the jet skis and the MONARCH OF THE SEAS were engaged in providing Royal Caribbean passengers, that day, with a recreational outing in conjunction with and as part of the Cruise vacation which was the subject of the contract between RCCL and Ms. Arnold.

Moreover, as set forth above, it was *only* by virtue of Claimant's status as paying passenger on the MONARCH OF THE SEAS that she was transported to CocoCay and permitted to use one of RCCL's jet skis. Indeed, since CocoCay is a private island wholly owned and controlled by RCCL; the island (and the use of RCCL's jet skis) is exclusively reserved for RCCL passengers – and closed to the public. Hence, CocoCay operated exclusively as an extension of the cruise ship. *See* RCCL's own description of CocoCay, attached hereto as Exhibit "A" ("Reserved exclusively for Royal Caribbean guests, this tropical paradise has been recently updated"). *See Doe v. Celebrity Cruises, et. al.,* 394 F. 3d 891, 901 (11th Cir. 2004).

**The jet skis and MONARCH OF THE SEAS are interdependent.** In *United States Dredging Corp. v. Krohmer*, 264 F. 2d 339 (2d Cir. 1959), the Court held that the factor determining that vessels constituted a flotilla was their interdependence. In that case, some of the vessels in the flotilla wholly depended on the other vessels in the flotilla, for fuel, transportation of the crew and supplies. The exact same scenario is present here. The jet skis in question are wholly dependent on RCCL cruise ships to bring RCCL cruise passengers to CocoCay so that the jet ski excursion can operate and function in the manner that they are utilized by RCCL.

In fact, because CocoCay is a private Island, exclusively reserved for RCCL passengers – and closed to the public; RCCL cruise ships are the primary, if not the only, method used by RCCL to transport RCCL passengers to and from CocoCay so that they can operate the jet skis in question. The MONARCH OF THE SEAS is essentially acting as a tender transporting RCCL

passengers to and from CocoCay which mandates that the subject vessel be included in the value of the limitation fund.

Thus, as in *Krohmer* the jet skis completely depend on the other vessel in the flotilla – the cruise ship, MONARCH OF THE SEAS – to perform the common enterprise of providing recreation for the passengers on RCCL's cruise.

### iv. The jet skis and the cruise ship at CocoCay were under a single command.

With respect to the "single command" requirement, courts have observed that "command" is not limited to onboard discretion. *The matter of Offshore Specialty,* 2002 U.S. Dist. LEXIS 8211 (E.D. La. 2002); *The Matter of Falcon Worker Co. Inc.,* 1999 U.S. Dist. LEXIS 5994 (E.D. La. 1999). Rather, a court may go "over the head of the captain of an individual boat" in order to establish single command among "common management personnel." *The Matter of Offshore Specialty*, 2002 WL 82798 (E.D. La. 1999).

As such, if two vessels share the same management personnel, this may satisfy the flotilla doctrine's single command requirement, even if the captains of each vessel are not the same person. *Foret v. Transocean Offshore (USA), Inc.,* 2011 U.S. Dist. Lexis 96679, at 22 (E.D. La. 2011); *see also Foret* at 25-26 ("single command is not, in fact limited to on-board discretion, but may instead be established by common management personnel").

Here, it is undisputed that both the jet ski tour and the cruise ships shared RCCL management personnel. It is undisputed that the MONARCH OF THE SEAS was ultimately managed by RCCL personnel located at RCCL's headquarters in Miami, Florida; the same is true of the jet skis. Further, on location, both the cruise ship and the jet skis were locally managed and operated (and in the passengers' cases, under the supervisory control of) RCCL employees. Therefore, both the jet skis and the cruise ship were under single command.

### III. Conclusion

As demonstrated by the foregoing, the flotilla doctrine clearly applies in this case. The jet skis at CocoCay and the cruise ship, MONARCH OF THE SEAS, were part and parcel of a flotilla for purposes of determining the fair and correct value of RCCL's limitation fund.  1.) There was a contractual relationship between RCCL and the Claimant in which RCCL agreed to provide a vacation cruise which included various activities and amenities such as the jet ski tour during which Ms. Arnold was injured; 2.) Both the jet skis and the MONARCH OF THE SEAS were engaged in the same enterprise as the use of the jet skis and the jet ski tour were part and parcel of the amenities/activities available to Ms. Arnold as part of the cruise package; 3.) Finally, MONARCH OF THE SEAS and the jet skis shared a common owner (RCCL), and were subject to single command (RCCL).

Therefore, pursuant Supplemental Federal Rule of Civil Procedure F(7), the *ad interim* stipulation concerning the limitation fund should be increased to include the value of the MONARCH OF THE SEAS, as well as the other Seadoo jet skis at CocoCay and their pending freight.

DATED:  August 21, 2012
Miami, Florida

Respectfully submitted,

/s/ *Philip D. Parrish*
Philip D. Parrish (541877)
phil@parrishappeals.com
PHILIP D. PARRISH, P.A.
7301 SW 57th Court, Ste 430
Miami, FL 33143
Tel:     (305) 670-5550
Fax:    (305) 670-5552

and

Glenn J. Holzberg, Esq.
glenn@holzberglegal.com
Law Offices of Glenn J. Holzberg, Esq.
7685 SW 104 Street Suite 220
Miami, Fl 33156-6410
Tel:    (305) 668-6410
Fax:    (305) 667-6161
*Attorneys for Claimant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 21, 2012 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Philip D. Parrish*
Philip D. Parrish (541877)

## SERVICE LIST

Glenn J. Holzberg, Esq.
glenn@holzberglegal.com
Law Offices of Glenn J. Holzberg, Esq.
7685 SW 104 Street Suite 220
Miami, Fl 33156-6410
Tel:    (305) 668-6410
Fax:    (305) 667-6161
*Attorneys for Claimant*

Darren W. Friedman, Esq.
dfriedman@fflegal.com
FOREMAN FRIEDMAN, PA
One Biscayne Tower, Suite 2300
2 South Biscayne Boulevard
Miami, Florida 33131
Tel:	(305) 358 6555
Fax:	(305) 374 9077
*Attorneys for Petitioner*

Randy S. Ginsberg, Esq.
Rginsberg@rccl.com
ROYAL CARIBBEAN CRUISES LTD.
1050 Caribbean Way
Miami, Florida 33132
Tel:	(305) 536 6000
Fax:	(305) 539 8101
*Attorneys for Petitioner*